John W. Sheller (SBN: 67519)
David C. Hunter (SBN: 208155)
HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd., Suite 800
Los Angeles, CA 90025
T: 310-909-8000
F: 310-909-8001

Attorneys for Scottish Citizen
DAVID SMITH

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| KIRBY MORGAN INC., a California Corporation,<br><br>Claimant,<br><br>vs.<br><br>HYDROSPACE LTD., A Scottish Limited Liability Corporation; DAVID SMITH, an individual resident of Scotland,<br><br>Respondents. | Case No. CV08-06531 PSG (FFMx)<br><br>**REPLY BRIEF IN SUPPORT OF PETITION TO QUASH CLAIM IN ARBITRATION FOR LACK OF PERSONAL JURISDICTION**<br><br>**EVIDENTIARY OBJECTIONS TO DECLARATION OF CONNIE LYN MORGAN FILED CONCURRENTLY HEREWITH**<br><br>[California *Code of Civil Procedure* §410.10]<br><br>DATE: November 17, 2008<br>TIME: 1:30 p.m.<br>DEPT.: Roybal, Room 790<br><br>AAA Arbitration Filed: September 15, 2008 Arbitration Hearing Date: None Set<br><br>No. 55 155 T 00368 08<br>[International Centre for Dispute Resolution] |

Specially appearing Respondent DAVID SMITH ("Smith") respectfully submits his Reply Brief to the Court:

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | SUMMARY AND ARGUMENT. | 2 |
| II. | KM PRESENTS NO FACTS OR EVIDENCE TO ESTABLISH JURISDICTION OVER SMITH. | 2 |
| III. | KM FAILED TO SHOW SMITH IS BOUND TO ARBITRATE UNDER THE AGREEMENT | 4 |
|  | A. KM Failed to Present A Shred of Admissible Evidence Re: Alter Ego. | 4 |
|  | B. KM Failed To Show Smith Bound As Agent of Hydrospace. | 11 |
| IV. | CONCLUSION. | 15 |

## TABLE OF AUTHORITIES

Page(s)

CASES

*American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*
(9th Cir.1996) 94 F.3d 588 .................................................................... 4, 9

*Associated Vendors, Inc. v. Oakland Meat Co.*
(1962) 210 Cal.App.2d .............................................................................. 8

*Benasra v. Marciano* (2001) 92 CA4th 987, 990–993 ................................ 14

*Bridas S.A.P.I.C. v. Government of Turkmenistan*
(5th Cir.2003) 345 F.3d 347 ...................................................................... 14

*Carpenters 46 Northern California Counties Conference Board v. Zcon Buildings*
(1996) 96 F.3d 410 ...................................................................................... 5

*Cline v. Atwood*
(1966) 241 Cal.App.2d 108 ....................................................................... 14

*Colt Studio, Inc. v. Badpuppy Enterprise*
(C.D.Cal.1999) 75 F.Supp.2d 1104 ............................................................ 4

*Creative Telecommunications, Inc., v. Breeden*
(D.Hawai'i, 1999) 120 F.Supp.2d 1225 ..................................................... 13

*Doe v. Unocal Corp.*
(9th Cir.2001) 248 F.3d 915 ................................................................. 10, 11

*E.I. DuPont de Nemours v. Rhone Poulenc Fiber*
(3d Cir.2001) 269 F.3d 187 ....................................................................... 13

*Erkenbrecher v. Grant*
(1921) 187 Cal. 7 ..................................................................................... 6, 8

*Filippo Industries, Inc. v. Sun Ins. Co.*
(1999) 74 Cal.App.4th 1429 ..................................................................... 14

*Flynt Distrib. Co. v. Harvey*
(9th Cir.1984) 734 F.2d 1389 ................................................................... 10

*Hokama v. E.F. Hutton & Co., Inc.*
(C.D.Cal .1983) 566 F.Supp. 636 ............................................................... 7

*Hollywood Cleaning & P. Co. v. Hollywood L. Service*
(1932) 217 Cal. 124 .................................................................................. 6, 8

*International Paper Co. v. Schwabedissen Mschinen & Anlagen GMBH* (4th Cr. 2000) 206 F.3d 411 ........................................................................ 11

*Letizia v. Prudential Bache Securities, Inc.*
(9th Cir.1986) 802 F.2d 1185 .......................................................... 11, 12

*Marsch v. Williams*
(1994) 23 Cal.App.4th 250 .......................................................... 15

*Neilson v. Union Bank of California*
(C.D.Cal.2003) 290 F.Supp.2d 1101 .......................................................... 4

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
(1993) 7 F.3d 1110 .......................................................... 12

*RAE Systems, Inc. v. TSA Systems, Ltd.*
(N.D.Cal.2005) 2005 WL 1513124 .......................................................... 4

*Retail Clerks Union Local 428 v. L. Bloom Salinas Company, Inc.*
(1959) 173 Cal.App.2d 701 .......................................................... 4

*Sher v. Johnson*
(9th Cir.1990) 911 F.2d 1357 .......................................................... 4

*Steel Company. v. Citizens for a Better Environment*
(1998) 523 U.S. 83: .......................................................... 3

*Wady v. Provident Life and Accident Co. of America*
(C.D.Cal.2002) 216 F.Supp.2d 1060 .......................................................... 7

*Zumwalt v. Schwarz*
(1931) 112 Cal.App. 734 .......................................................... 14

**STATUTES**

California *Code of Civil Procedure* § 410.10 .......................................................... 2

**OTHER AUTHORITIES**

3 Corpus Juris Secundum (2003) Agency, §492, p. 41 .......................................................... 14

## I. SUMMARY AND ARGUMENT.

Respondent DAVID SMITH ("Smith") is a citizen of the United Kingdom and resident of Scotland. Smith has no contacts with California. Smith has not purposefully availed himself of any benefits provided by California. This is undisputed.

Smith's Petition to Quash is for all intents and purposes unopposed. Smith petitioned this Honorable Court to quash the Claim in Arbitration filed by KIRBY MORGAN INC. ("KM") against him as an individual.

First, Smith submitted uncontroverted evidence he is <u>not</u>, under the Due Process Clause of the United States Constitution and California *Code of Civil Procedure* §410.10, subject to jurisdiction by any United States court or the American Arbitration Association. KM failed to address this issue *at all*.

Second, KM places the cart before the horse by attempting to address the merits of its Demand in Arbitration without first establishing jurisdiction over Smith. Smith is not bound by a contract he never signed. KM presents no facts to support its bald claim of alter ego. KM has not even properly pled, let alone demonstrated, there is a basis for piercing the corporate veil as a grounds for jurisdiction over Smith.

Smith's Petition to Quash for lack of jurisdiction must be GRANTED.

## II. KM PRESENTS NO FACTS OR EVIDENCE TO ESTABLISH JURISDICTION OVER SMITH.

KM ignores the complete lack of jurisdiction over Smith and presents this Court with an incorrect legal standard: "Accepting all of the information in the Demand for Arbitration as true . . ." (Opposition, Page 8, Lines 25-26); ". . . and taking of the allegations in [KM]'s Demand for Arbitration as true" (Opposition, Page 11, Lines 17-18). KM offers no legal authority for this proposition. KM does not provide any because there is none.

A notion which would allow KM to simply state – with no evidence- the magic words "Smith is Hydrospace's alter ego" and thus subject to personal jurisdiction is an affront to the very important requirements of due process.

> "... The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. **The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that 'the maintenance of the suit ... not offend "traditional notions of fair play and substantial justice."** *International Shoe Co. v. Washington*, (1945) 326 U.S. 310, 316.

This Court is required to establish personal jurisdiction <u>before</u> reaching the merits of KM's claims. As stated by the United States Supreme Court in *Steel Company. v. Citizens for a Better Environment*, (1998) 523 U.S. 83:

> "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868). "On every writ of error or appeal, <u>the first and fundamental question is that of jurisdiction</u>, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested and without respect to the relation of the parties to it." *Great Southern Fire Proof Hotel Co. v. Jones* at 453, 20 S.Ct., at 691-692. <u>The requirement that jurisdiction be established as a threshold matter</u> "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

KM is required to establish jurisdiction over Smith <u>before</u> it can begin to delve into the merits of its unsupported allegations against him. KM failed to meet this burden. Smith presented this Court with his declaration establishing he has no contacts with California and has not purposefully availed himself of any benefits provided by California. Neither of the affidavits submitted in Opposition dispute this key point. Here, the analysis should end. This Petition must be GRANTED.

## III. KM FAILED TO SHOW SMITH IS BOUND TO ARBITRATE UNDER THE AGREEMENT

### A. KM Failed to Present A Shred of Admissible Evidence Re: Alter Ego.

KM admits Smith's only conceivable tie to the arbitration is under the Dealer Services Agreement dated June 23, 2003. The Dealer Agreement appoints California law to govern the contract. The appropriate law therefore for the determination of the question whether Smith must be bound to the Dealer Agreement by alter ego so as to justify a finding of in personam jurisdiction over him is a question of California law.

The plaintiff in an action has the burden of establishing jurisdiction. *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* (9th Cir.1996) 94 F.3d 588. The plaintiff must produce admissible documentary evidence containing facts sufficient to support a finding of personal jurisdiction. *Sher v. Johnson,* (9th Cir.1990) 911 F.2d 1357, 1361 ("Liability and jurisdiction are independent.").

A plaintiff may not simply make "conclusory allegations" to establish liability under an alter ego theory. *Neilson v. Union Bank of California,* (C.D.Cal.2003) 290 F.Supp.2d 1101, 1116; **Courts have applied this standard to require plaintiffs make more than "conclusory allegations" to support personal jurisdiction under an alter ego theory.** *RAE Systems, Inc. v. TSA Systems, Ltd.,* (N.D.Cal.2005) 2005 WL 1513124; also *Colt Studio, Inc. v. Badpuppy Enterprise,* (C.D.Cal.1999) 75 F.Supp.2d 1104, 1111.

There are two important California cases to consider. First is *Retail Clerks Union Local 428 v. L. Bloom Salinas Company, Inc.,* (1959) 173 Cal.App.2d 701. In *Retail Clerks* a labor union petitioned for an order in Superior Court directing the respondent grocery company corporation to arbitrate certain disputes under a collective bargaining contract. The union claimed it was entitled to force the grocery company to answer for the activities of another company, a grocery store with a similar name, on the grounds the similar company was only the alter ego of the respondent grocery company.

4

REPLY BRIEF IN SUPPORT OF PETITION TO QUASH

31124957v1 891833 68704

The union argued the question of alter ego should be determined by the arbitrator and the matter should simply be sent to arbitration for determination. The trial court disagreed and refused to order the matter to arbitration. The union appealed. The Court of Appeals <u>affirmed</u> the trial court holding at page 703:

> "However, appellant maintains that Bloom's Salinas, Inc. is but the alter ego of respondent, that it has no identity apart from respondent, and that therefore the contract of respondent is, in reality, also the contract of Bloom's Salinas, Inc. Appellant begs the question. It must first be determined whether Bloom's Salinas Inc. is **in fact** but the alter ego of respondent. A corporation's separate identity will be disregarded only when, and to the extent that, it is necessary so to do in order to prevent fraud or injustice. (Citations.) **The proper forum for that determination is, of course, a court of law.**"

The second case is *Carpenters 46 Northern California Counties Conference Board v. Zcon Buildings*, (1996) 96 F.3d 410, where a similar result was reached applying Federal law. The Carpenters Union brought an arbitration proceeding against a general contractor, Zcon, with whom it had a collective bargaining agreement and sought to arbitrate similar claims against an alleged alter ego real estate developer, Sharon Hill. The *arbitrator* found Sharon Hill was a proper party to the arbitration because it was the alter ego of Zcon. Sharon Hill waited until the Federal Court hearing to approve the award to brief the question whether it was bound by alter ego to the arbitration agreement. The Court of Appeal agreed with Sharon Hill it was *beyond the authority of the arbitrator to determine the alter ego question as a predicate to arbitration against Sharon Hill*. At page 414 [arbitratability]:

> "Sharon Hill also contends that the District Court erred in deferring to the arbitrator's decision that Sharon Hill, as the alter ego of Zcon, was subject to the arbitration provisions of Zcon's collective bargaining agreement with the Carpenters. Specifically, Sharon Hill argues that such issues of arbitratability are for the courts, so that no deference should have been given to the arbitrator's decision. We agree with the premise that arbitratability, under most circumstances, must be resolved by the court, and we conclude that the facts of this case do not warrant a departure from that general rule."

The court further explained in the same section of the decision:

> "the affect of these principals in this case is clear: Sharon Hill can only be required to submit to arbitration if it is bound by the terms of the agreement which contain the arbitration procedure. The Carpenters

contend that Sharon Hill, although not a signator to the agreement, is nevertheless bound by its terms because it is an alter ego of Zcon, which did sign the agreement. **However, that issue of arbitratability is clearly reserved for the courts, and is not, itself, a proper subject of arbitration.** As the Supreme Court stated in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543-547, 84 S.Ct. 909, 913 (1964), "the duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede the judicial determination that the collective bargaining does in fact create such a duty."

Thus, the District Court erred in deferring to the arbitrator's decision that Sharon Hill was bound by the mandatory arbitration provisions of the agreement. The alter ego must claim be established decided by the Court.

Here, KM tells this Court "Smith is the alter ego of Hydrospace". Opposition, Page 8, Lines 11, Lines 26-27. KM states "Based *upon information available* to KM, Hydrospace and Smith function as one". Opposition, Page 4, Lines 10-11. The time to present this "information" to the Court is now. KM failed to present any admissible "information" to the Court or show how Smith's relationship with Hydrospace was in any way improper.

KM alleges "Smith owns and has directed and directs all activities of Hydrospace" (Opposition, Page 1, Lines 26-27; Page 2, 13-14; Page 8, Lines 9-11). Mere ownership of all the stock and control and management of a corporation by one or two individuals is not of itself sufficient to cause the courts to disregard the corporate entity. *Hollywood Cleaning & P. Co. v. Hollywood L. Service,* (1932) 217 Cal. 124, 129; *Erkenbrecher v. Grant,* (1921) 187 Cal. 7.

KM makes the bald allegation that "Smith and Hydrospace are one, and a contract with Hydrospace is a contract with Smith". (Opposition, Page 1, Lines 27-28; Page 8 Lines 27-28; and again on Page 12, Lines 21-22). What KM fails to show this Court is: **How?**

Smith is obviously the agent of a disclosed principal and not personally responsible for the contract he signed in that capacity.

The law is clear KM's conclusory allegations of alter ego status are insufficient to state a claim. "Rather, a plaintiff must allege specifically both of the elements of

alter ego liability, as well as facts supporting each." *In re Currency Conversion Fee Antitrust Litigation*, (S.D.N.Y.2003) 265 F.Supp.2d 385, 426. ( 'These purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard'.)

In *Wady v. Provident Life and Accident Co. of America*, (C.D.Cal.2002) 216 F.Supp.2d 1060 the plaintiff's complaint alleged simply that defendant UnumProvident was a Maine corporation with its principal place of business in Maine that transacted business in California; and "UNUM's denial of the plaintiff's disability benefits claim constitutes a breach of the insurance contract between Provident Life and the plaintiff." The *Wady* court held this to be insufficient. "More pertinent for purposes of the current discussion, none [of the allegations] . . . state that UnumProvident treats the assets of Provident as its own, that it commingles funds with Provident, that it controls the finances of Provident, that it shares officers or directors with Provident, that Provident is undercapitalized, or that the separateness of the subsidiary has ceased. Without such allegations, **the issue is not adequately raised**, and UnumProvident was not put on notice that this was a theory against which it should be prepared to defend'". *Wady, supra* at 1067.

*Hokama v. E.F. Hutton & Co., Inc.*, (C.D.Cal .1983) 566 F.Supp. 636 is in accord: "Defendants further argue that plaintiffs cannot circumvent the requirements for secondary liability by <u>blandly asserting</u> that Madgett, Consolidated, and Frane are "alter egos" of other defendants accused of committing primary violations. This point is well-taken ... **If plaintiffs wish to pursue such a theory of liability, they must allege the elements of the doctrine. Conclusory allegations of alter ego status such as those made in the present complaint are not sufficient**" *Hokama, supra* at 647.

KM alleges "Permitting Smith to avoid the arbitration proceeding when all of the claims in the Demand for Arbitration arise out of his misconduct would be unfair" (<u>Opposition</u>, Page 9, Lines 1-2) and "Hydrospace's deliberate failure to participate in the arbitration and its claim that is lacks the resources show that the corporate form

should be disregarded" (<u>Opposition,</u> Page 9, Lines 21-22). This does note even come close to making a showing of alter ego.

The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. **Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard.** *Associated Vendors, Inc. v. Oakland Meat Co.,* (1962) 210 Cal.App.2d at p. 842.[1]

KM has attached to its Opposition memorandum the arbitration demand (Exhibit "E" to the Declaration of Connie Lynn Morgan submitted in support of the Opposition).

The sole conclusionary fact alleged against Smith with respect to alter ego is at page 2, line 3: "Smith and Hydrospace are alter egos." (The fact that Smith as managing director directs the activities of Hydrospace is not relevant to alter ego. Ordinarily directors direct activities without creating personal liability.) *Hollywood Cleaning, supra* and *Erkenbrecher, supra.*

---

[1] In *Associated Vendors, Inc. v. Oakland Meat Co.,* (1962) 210 Cal.App.2d 825, 838-840 the Court of Appeal listed the variety of factors pertinent to the imposition of alter ego liability:

"Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses ...; the treatment by an individual of the assets of the corporation as his own ...; the failure to obtain authority to issue stock or to subscribe to or issue the same ...; the holding out of an individual that he is personally liable for the debts of the corporation ...; the failure to maintain minutes or adequate corporate records, and the confusion of the records of separate entities ...; the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; sole ownership of all of the stock in a corporation by one individual or the members of a family ...; the use of the same office or business location; the employment of the same employees and/or attorney ...; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation ...; the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities ...; the disregard of legal formalities and the failure to maintain arms-length relationships among related entities ...; the use of the corporate entity to procure labor, services or merchandise for another person or entity ...; the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another ...; the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions ...; and the formation and use of a corporation to transfer to it the existing liability of another person or entity."

KM failed to present evidence in support of any factor listed above as between Smith and Hydrospace.

1   The only parties to the Dealer Agreement are alleged at paragraph 19: **Kirby Morgan and Hydrospace entered into the contract**.

Even the alleged breach of the Dealership Agreement is merely alleged "on information and belief." Paragraph 29 alleges "Smith purchased the manufacturing rights to competing commercial diving helmets". There is not a shred of admissible evidence before the Court on that subject.

At page 9, paragraph 32, it is alleged "upon information and belief Hydrospace and/or Smith are selling the accused products." There is not a shred of admissible evidence before the court to connect Smith with any wrongful conduct of any kind.

As KM has not presented any evidence in support of its alter ego theory, personal jurisdiction over Smith cannot be established. A case on point is *AT&T Co. v. Compagnie Bruxelles Lambert*, supra at 586. In *AT&T* the telephone company was sued by Keystone, a domestic corporation, for contaminating a dumpsite. *AT&T* filed a cross-complaint against Defendant GBL, a Belgian holding company, that indirectly owned 80 percent of the domestic company's stock. AT&T argued this ownership interest, coupled with the Belgian company's alleged "total control" over Keystone, established personal jurisdiction over GBL. After being served with process in Belgium, GBL filed a motion to dismiss for want of personal jurisdiction. The district court granted the motion. The 9th Circuit Court of Appeals affirmed.

AT&T offered no evidence that GBL was directly involved with the Bakersfield facility. Instead, it relied on a miscellany of events and internal Keystone decisions, undisputed by GBL, which AT&T contended demonstrate GBL's total control over Keystone and demonstrated that GBL and Keystone had an alter ego relationship sufficient to subject GBL to personal jurisdiction once jurisdiction over Keystone was established.

GBL submitted affidavits from Rene Van Achter, a GBL employee who sat on Keystone's board of directors, stating that GBL conducted no business in the United States and had no direct involvement in operating Keystone's Bakersfield facility, and

that no GBL or LBC employee was involved in Keystone's day-to-day affairs. GBL's indirect ownership of Keystone stock involved no contacts with California; Van Achter attended no meetings in California, and communications with Keystone typically took place in Brussels, New York City, or Pittsburgh.

[Such is the case here: KM relies on an unsupported string of allegations of alter ego but presents no evidence. Smith on the other hand presented his declaration showing he has no contacts with California or the United States.]

The *AT&T* court found the plaintiff did not properly allege alter ego and the circumstances presented reflected no more than a normal parent-subsidiary relationship. It looked to the 9th Circuit's holding in *Flynt Distrib. Co. v. Harvey* (9th Cir.1984) 734 F.2d 1389 and found plaintiff did not make its case "(1) that there is such unity of interest and ownership that the separate personalities of [Keystone and GBL] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." In *Flynt,* the plaintiff made a prima facie showing of an alter ego relationship by submitting affidavits indicating the two sole shareholders of several corporations had *converted corporate assets for their own use*, had *dealt with the various corporations as if they were one*, and had *transferred assets among the corporations*, leaving some of them *undercapitalized. Flynt,* 734 F.2d at 1393-94.

The affidavits submitted in support of KM's Opposition do not present any admissible evidence on these points at all.

See also *Doe v. Unocal Corp.* (9th Cir.2001) 248 F.3d 915. "Plaintiffs present a wealth of evidence in support of their opposition to the Motion, but their evidence does not suggest such a unity of interest and ownership between (defendant Total) and its subsidiaries that their separate corporate personalities no longer exist. Plaintiffs' evidence here establishes only that Total is an active parent corporation involved directly in decision-making about its subsidiaries' holdings. <u>Because Total and its subsidiaries observe all of the corporate formalities necessary to maintain corporate</u>

separateness, the first prong of the alter ego test is not satisfied, and the Court need not address the equities." *Doe v Unocal Corp.*, supra at 927.

The bottom line is this: KM could have contracted with Smith as an individual. It did not. KM failed to properly plead alter ego, and has presented no evidence in support of this claim. KM failed to satisfy its burden under the alter ego theory of jurisdiction. KM has not shown Smith's relationship with Hydrospace is so intimate and dominating, <u>and</u> the business and assets of Smith and Hydrospace so mingled, that recognition of Hydrospace as a separate entity would result in an injustice.

Even if KM made such allegations, Smith's Declaration would contradict them. Moreover, KM failed to produce any competing evidence. For all of these reasons, KM failed to meet its burden of establishing personal jurisdiction over Smith under the alter ego theory. This Petition to Quash must be GRANTED.

**B.    KM Failed To Show Smith Bound As Agent of Hydrospace.**

KM states "[A] corporation's arbitration obligation extends to non-signatory officers who are deemed agents of the corporation". KM cites to <u>Opposition,</u> Page 6, Lines 13-17. *Letizia v. Prudential Bache Securities, Inc.* (9th Cir.1986) 802 F.2d 1185 and in *International Paper Co. v. Schwabedissen Mschinen & Anlagen GMBH* (4th Cr. 2000) 206 F.3d 411 for this proposition.

KM omits a key point – in fact the turning point – on this issue.

A nonsignatory is not bound by an arbitration agreement, except in **very limited circumstances**. *Letizia v. Prudential Bache Securities, Inc.* (9th Cir.1986) 802 F.2d 1185. In *Letizia* the employees of a brokerage firm sought to compel arbitration, even though the customer agreement containing the arbitration provision between plaintiff and brokerage firm was signed by the plaintiff and not by the employees. The court concluded because the brokerage firm *indicated its intention to protect its employees through its customer agreement with the plaintiff*, and the employees' allegedly wrongful acts related to their handling of the plaintiff's account, the arbitration clause was applicable to the employees. *Letizia* at 1188. In *Letizia* the

employees were seeking to enforce an agreement signed by the plaintiff, whereas here KM seeks to bind Smith to an arbitration agreement he never joined in or agreed to in any way.

Likewise in *International Paper*, the Fourth Circuit held that a nonsignatory was estopped from avoiding arbitration <u>where it sued to enforce warranty provisions in the contract</u>. *Id.* at pp. 413-414, 418. There, a buyer of an industrial saw brought suit against the manufacturer of the saw on the basis of a contract between the manufacturer and the distributor of the saw, which contained an arbitration clause. *Id.* at pp. 413-414. The court concluded that "the buyer cannot sue to enforce the guarantees and warranties of the distributor-manufacturer contract without complying with its arbitration provision...." *Ibid.*

In so holding, the *International Paper* court reasoned: "The [distributor-manufacturer] contract provides part of the factual foundation for every claim asserted by [buyer] against [manufacturer]. In its amended complaint, [buyer] alleges that [manufacturer] failed to honor the warranties in the [distributor-manufacturer] contract, and it seeks damages, revocation, and rejection 'in accordance with' that contract. [Buyer's] entire case hinges on its asserted rights under the [distributor-manufacturer] contract; it cannot seek to <u>enforce those contractual rights</u> and <u>avoid the contract's requirement</u> that 'any dispute arising out of' the contract be arbitrated." (*Id.* at p. 418, italics added.)

The other cases cited by KM in support of this "deemed agent" theory all involve <u>employees</u> of companies who <u>sought to benefit</u> from the protection of an arbitration clause. The Court in *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, (1993) 7 F.3d 1110 held statutory *ERISA* claims are subject to arbitration under Federal Arbitration Act (FAA) where the parties to such a clause *unmistakably intend* to arbitrate all controversies which might arise between them and the *parties* have executed valid arbitration agreement encompassing claims at issue [not the case here]. The *Pritzker* court confined its ruling: "We hold only that statutory ERISA claims are

1  subject to arbitration under the FAA when the parties have executed a valid arbitration
2  agreement encompassing the claims at issue. For a number of reasons . . . our focus
3  here is limited to arbitration under the FAA". This case is inapplicable.
4      The Court in *Creative Telecommunications, Inc., v. Breeden*, (D.Hawai'i,
5  1999)120 F.Supp.2d 1225 reaffirmed the rule that a <u>successor in interest</u> can enforce
6  an arbitration clause in a contract signed by its predecessor. *Creative Telecom.*
7  centered around the sale of a business. The court relied on the provision in the subject
8  asset sale agreement requiring arbitration of "[a]ny dispute, claim, or disagreement
9  under or relating to this Agreement" encompassed seller's claims against buyer for
10 invasion of privacy as result of seller's alleged interference with an e-mail account
11 while he was its employee after sale was completed, where the employment contract
12 was entered into in contemplation of sale agreement. The employees of the successor
13 company were contractually bound to arbitrate. This is a completely different
14 situation than the issue before this Court.
15     In these cases the parties stood on the contract, and the whole contract. They
16 sought to enforce the contract and they even sued as third party beneficiaries.
17     **Smith on the other hand is not bound by the Dealer Services Agreement in**
18 **any respect. There is no language in the Dealer Services Agreement that confers**
19 **a direct benefit on Smith.**
20     Under federal decisional law, "[a] nonsignatory is estopped from refusing to
21 comply with an arbitration clause 'when it receives a "direct benefit" from a contract
22 containing an arbitration clause.' [Citations.]" *International Paper, supra*, 206 F.3d at
23 p. 418. In such instances, "estoppel has been limited to 'cases [that] involve non-
24 signatories who, *during the life of the contract, have embraced the contract despite*
25 *their non-signatory status* but then, during litigation, attempt to repudiate the
26 arbitration clause in the contract.' *E.I. DuPont de Nemours v. Rhone Poulenc Fiber*,
27 (3d Cir.2001) 269 F.3d 187 at p. 200.
28

1 | Smith has never sought to enforce the Dealer Services Agreement. All of KM's
2 | cited authority is **inapplicable.**

3 | Next, KM alleges Smith is still bound to arbitrate the dispute because he signed
4 | the Dealer Agreement as Managing Partner of Hydrospace. Opposition, Page 5, Lines
5 | 11-13. This is false.

6 | Corporate officers who sign such contracts *in their representative capacities* are
7 | not third party beneficiaries in the absence of clear evidence that the parties intended
8 | to confer such a benefit. *Benasra v. Marciano*, (2001) 92 CA4th 987, 990–993. In
9 | other words Smith, as the Managing Director or agent of a disclosed principal
10 | (Hydrospace) did not consent to jurisdiction under the Dealer Agreement.

11 | "[I]t is a general rule of agency that where an agent contracts on behalf of a
12 | disclosed principal the presumption is, in the absence of an agreement otherwise, that
13 | it was the agent's intention to bind the principal and not to incur a personal liability;
14 | and ordinarily the agent will not be held personally except upon clear and explicit
15 | evidence of an intention to substitute or superadd his personal liability for or to that of
16 | his principal." *Zumwalt v. Schwarz* (1931) 112 Cal.App. 734, 736. "A plaintiff who
17 | seeks to hold one acting in a representative capacity liable personally must plead and
18 | prove facts showing that, although the defendant acted in a representative capacity, his
19 | or her failure to disclose the principal rendered the defendant liable personally." 3
20 | Corpus Juris Secundum (2003) Agency, §492, p. 41; *Filippo Industries, Inc. v. Sun
21 | Ins. Co.* (1999) 74 Cal.App.4th 1429, 1442; *Cline v. Atwood* (1966) 241 Cal.App.2d
22 | 108, 112.

23 | "[P]arties are presumed to be contracting for themselves only." *Bridas
24 | S.A.P.I.C. v. Government of Turkmenistan* (5th Cir.2003) 345 F.3d 347 at 362. This
25 | presumption is particularly compelling, where, as here, a signatory to a contract seeks
26 | to compel a nonparty to arbitrate its claims. "It is one thing to permit a nonsignatory to
27 | relinquish his right to a jury trial, but quite another to compel him to do so." *Benasra
28 | v. Marciano, supra* at p. 991. "[T]he right to pursue claims in a judicial forum is a

substantial right and one not lightly to be deemed waived. [Citations.]" *Marsch v. Williams*, (1994) 23 Cal.App.4th 250, 254.

Here, there is nothing in the Dealer Agreement establishing Smith agreed to AAA having jurisdiction over *him*. KM cannot make this showing. Smith did nothing to "superadd his personal liability" under the Dealer Agreement as to write him in as an agent acting on behalf of an unidentified principal. Smith did not sign the Dealer Agreement in his personal capacity. As set forth above KM failed to meet its burden of establishing personal jurisdiction over Smith under an agency theory.

## IV.   CONCLUSION.

KM's Opposition papers do nothing to rectify its failure to meet due process requirements when naming Smith as a party in the Arbitration. KM has presented no admissible evidence to show Smith is subject to in personam jurisdiction of the California courts, this Court or the AAA. KM's purported theories of agency and alter ego fail in law and fact. This Petition to Quash must be GRANTED.

Dated: November 10, 2008          HINSHAW & CULBERTSON LLP

John W. Sheller
David C. Hunter
on behalf of Specially Appearing
Respondent
DAVID SMITH

## PROOF OF SERVICE

*Kirby Morgan v. Hydrospace*
United State District Court (Central District)
Case No. CV08-06531 PSG (FFMx)

I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of 18 and not a party to the within actions; my business address is 11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025. On November 10, 2008, I served the document(s) entitled, **REPLY BRIEF IN SUPPORT OF PETITION TO QUASH CLAIM IN ARBITRATION FOR LACK OF PERSONAL JURISDICTION,** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

**Richard A. Lesser, Esq.**
**Lesser & Associates**
A Professional Law Corporation
1 Pearl Street
Redondo Beach, CA 90277
Phone: (310) 374-4808
Fax: (310) 372-7715
Email: lesser@divelaw.com

**Daniel M Cislo, Esq.**
**Cislo & Thomas LLP**
1332 2nd Street Suite 500
Santa Monica, CA 90401
310-451-0647
310-394-4477 (fax)
Email: dancislo@cislo.com

**Carolina S. Machado**
**International Case Manager**
1633 Broadway, 10th Floor
New York, NY 10019
Phone: (212) 484-4181
Fax: (212) 246-7274
Email: MachadoC@adr.org

[ X ] **(VIA OVERNIGHT MAIL):** I deposited such envelope to be placed for collection and handling via UPS following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for UPS. On the same day that material is placed for collection, it is picked by UPS at Los Angeles, California.

[ X ] **(BY E-MAIL OR ELECTRONIC TRANSMISSION):** I caused the documents to be to be sent to the person(s) at the email address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States that the above true and correct and was executed on November 10, 2008, at Los Angeles, California.

_Robin Mojica_
Robin Mojica